## Case No. 2,899.

CLINTON et al. v. MAYO.

[12 N. B. R. 39.][1]

District Court, E. D. Virginia. 1875.

PETITION IN INVOLUNTARY BANKRUPTCY — SUFFICIENCY—HEARING ON RETURN DAY—JURY.

1. On the hearing of a petition in compulsory bankruptcy, when the debtor defendant declines to appear and defend in form, but is personally present, the court will hear a suggestion from any creditor, though it is a creditor who is charged with having received a fraudulent preference, that an insufficient number of creditors have joined in the petition.

[Cited in Re Hatje, Case No. 6,215; Re Jonas, Id. 7,442; Re Austin, Id. 662.]

2. When such a suggestion has been made, the court, if the bankrupt is relied upon to prove the insufficiency of the number of petitioning creditors, will require him to make his statement in writing, under oath, and accompany it with a list of all his creditors, and of the amounts due them.

3. If the examination into the question, whether a sufficient number of creditors have joined in the petition, has not been completed at the hearing on the day to which the order on the debtor defendant to show cause has been made returnable, and is continued until the next day, the defendant having been previously served personally with the order, and being personally present on the return day, and having failed on that day to demand a jury for the trial of the charges of acts of bankruptcy; in such a case, the defendant will not be allowed a jury if he demand one on the second day; that not being an "adjourned day" within the meaning of section 41 of the bankrupt law. [14 Stat. 537;] Rev. St. § 5026.

4. In determining whether or not a sufficient number of creditors have joined in a petition, where it is proved that a preferred creditor had "reasonable cause to believe that the debtor was insolvent, and knew that a fraud upon the bankrupt act was intended," the court will throw out of the computation the claim of the creditor so preferred, at least as to a moiety of its amount.

[Cited in Re Currier, Case No. 3,492.]

[1] [Reprinted by permission.]
5FED.CAS.—67

The petition was filed on the 17th of March, 1875 [by G. D. W. Clinton, and others]. It charged sundry acts of bankruptcy [against D. C. Mayo]. Amongst those specified was the confession of a judgment for twenty-four thousand seven hundred and sixty-three dollars to M. E. McDowell & Co., of Philadelphia, on the 23d of January, 1875. The usual allegations were made as to fraudulent knowledge on the part of the plaintiffs in the judgment, and of insolvency on the part of Mayo, the debtor defendant. A rule was given for a hearing on the 29th of March. On that day Mayo, though personally present, declined to enter a formal appearance, or to deny, by answer, the allegations of the petition. Thereupon, an order was entered treating as confessed, as to Mayo, the acts of bankruptcy charged in the petition, and leaving open only the question whether a sufficient number of creditors had joined in it. The judgment creditors, in the judgment that had been confessed, were present by counsel, and suggested that the number of creditors required by law had not united in the petition; and asked that Mayo might be examined as to who were his creditors and the amounts due them. It was contended by counsel for the petitioning creditors, that none could make the objection now made, of the lack of the required number of creditors as petitioners, save the debtor defendant himself. The court allowed the debtor defendant to be examined, and while he was preparing his denial in writing that a sufficient number of creditors had joined, and preparing his list of creditors and the amounts due them, the examination was laid over until the next day, the 30th of March. On that day, the debtor defendant having changed his mind, asked leave to appear and file, as his answer to the petition, the statement which he had prepared in writing; denying all acts of bankruptcy; denying that a sufficient number of creditors had joined, and setting forth the names of his creditors, and the amounts due them; and furthermore filed in writing a demand that the charges of acts of bankruptcy might be tried by a jury. The court refused to allow the writing to be filed as an answer, and treated its denial of acts of bankruptcy as surplusage; but accepted it as his testimony as of a witness called upon to give evidence by a creditor who had suggested that a sufficient number of creditors had not joined in the petition. The court also denied the demand for a jury. The examination was then (on the 30th of March) continued until the 5th of April, and personal notice ordered to be served by the marshal on creditors not present, all of whom were residents of Richmond, except two whose claims were for less amounts than fifty dollars. On the 5th of April the examination proceeded, and was concluded. The statement in writing submitted by Mayo, and his oral testimony, exhibited the following facts:

| | |
|---|---|
| Aggregate claims of petitioning creditors, which each exceeded $250.00 | $ 4,572 34 |
| Claims of petitioning creditors which were less than $250.00 | 1,785 52 |
| Total claims of petitioning creditors | $ 6.357 86 |
| Aggregate claims of non-petitioning creditors, each greater than $250.00 | $21,158 31 |
| Aggregate claims of non-petitioning creditors, each less than $250.00 | 287 37 |
| Total claims of non-petitioning creditors | $21,445 68 |
| Total of all claims | $27,803 54 |

The claim of the preferred creditors, M. E. McDowell & Co., was eighteen thousand and sixty-two dollars and eighty-nine cents; and the act of bankruptcy charged, was a confession of judgment which had been given by Mayo to them for twenty-four thousand seven hundred and sixty-three dollars, upon which execution had been taken out. The lien of an execution has the effect, under the laws of Virginia, of divesting the title of the debtor in all personal property, to the amount of the debt, subject only to his right to certain poor debtor and homestead exemptions.

The following was the opinion and decision of the court on the several questions which arose in the examination.

L. H. Chandler and James E. Neeson, for petitioning creditors.

H. A. & J. S. Wise and J. D. Christian, for the firm of M. E. McDowell & Co., creditors who had received a confession of judgment within three months of the filing of the petition.

HUGHES, District Judge. Before the amendment of June, 1874, there was substantially but one inquiry in adjudicating upon involuntary petitions in bankruptcy. It was, whether an act, or acts, of bankruptcy had been committed. The trial of that fact might be by jury, if seasonably demanded by the debtor defendant. The law in that respect remains as before. But the amendment of June, 1874, superadds another inquiry. It gives jurisdiction in involuntary bankruptcy only in cases where a fourth in number and a third in value of the creditors unite in the petition. Accordingly, there are substantially two charges in this petition: First. That certain acts of bankruptcy have been committed; and, second. That a fourth in number and a third in interest of the creditors have united in the petition. The debtor was called upon to answer these charges on the 29th day of March. He declined, though personally present on that day, to formally appear and defend. The court, therefore, had nothing to do as to the first charge, but to take it for confessed that the acts of bankruptcy charged in the petition were committed, and treat that part of the petition as adjudicated. But the amendment of June, 1874 [18 Stat. 180], now also requires that the court shall be "satisfied" that the number of creditors which has been stated shall have united in the petition; and provides that if the bankrupt deny the allegation of the petition in this respect, his denial shall be in writing; and he shall be required at once to file a schedule of all his creditors, and of the amounts due them. Then, if it appear to the court that the number having signed the petition is short of what is requisite, ten days are to be given the petitioners in which to add the proper number. I therefore required the debtor, Mayo, when called upon to testify as a witness, to put his denial in writing, under oath, and at once to file a list of his creditors and the amounts due them.

As to the point insisted upon by counsel, that the creditors who have received a confession of judgment giving them a preference, should not be heard to make the objection of insufficiency in the number of petitioning creditors; it is true that they are not yet regularly in court, and will not be until either they shall have proved their claim, or a bill in chancery shall have been filed to set aside their judgment; still, not only they. but any one may suggest at the return day of the order on the debtor to show cause, that the number of petitioners is not sufficient; and, either upon such suggestion, or ex mero motu, in order to be "satisfied" on that point, the court will call upon the debtor for a list of his creditors, and take any other evidence it can avail itself of on that subject. I accordingly did, at the suggestion of M. E. McDowell & Co., call upon Mayo for such a statement. The demand for a jury was not made by the debtor defendant, Mayo, on the return day of the order on him to show cause. He was present on that day, though he did not enter a formal appearance. The return of the marshal on the order was that he had been served with a copy of it on the 20th of March. When such service has been made, and the debtor is present, the terms of section 5025 of the Revised Statutes do not authorize an "adjourned day" for the hearing of the petition; and, therefore, the terms of section 5026 require that the demand in writing for a jury shall be made on the return day, and do not give that right on any other day. I therefore denied the demand for a jury in writing on the 30th, which the law expressly required to be made on the 29th of March.

The single question now left in this case is, whether the debt of twenty-four thousand seven hundred and sixty-three dollars, for which the confession of judgment given on the 23d day of January, 1875, for the purpose of preferring M. E. McDowell & Co., is provable in whole, or for a moiety, and to be computed as to the whole or only as to half, in this preliminary proceeding. Before the amended bankrupt act of the 22d of June, 1874, if the claim of a creditor were doubted by the judge or disputed, especially a claim for which a creditor had accepted a prefer-

ence, it was postponed, and could not be proved until after an assignee was appointed. There was then no provision in the bankrupt law requiring that any specific number of creditors should join in a petition in involuntary bankruptcy; and no computation was necessary of the number of creditors, which could be affected by postponing the proof of the claim. Before the amendment of June 22, 1874, requiring a specific number of petitioning creditors to join in such a petition, there was no provision in the 39th section authorizing or requiring the court to pass upon the question, whether a preference had been given in fraud of the provisions of the bankrupt act, in adjudicating upon the petition in involuntary bankruptcy; because it was then unnecessary to give it that power. But when the amendment of June 22, 1874, was passed, an additional clause was added to the 39th section, immediately following the clauses requiring a specific number of creditors to join in the petition; which clause was, in fact, made necessary by that amendment. That clause empowers the court, at the time of ascertaining whether one-fourth in number and one-third in amount of creditors had joined in the petition, to decide, pro hac vice, whether the preferred creditor had had "reasonable cause to believe that the debtor was insolvent; and knew that a fraud upon the bankrupt act was intended." I say it was necessary to add this clause to the 39th section, and to give this power to the court, at least for the purposes of adjudication. I do not pretend that the decision of this court on this question, in this preliminary stage of the proceeding, is final and conclusive as against the parties to the preference; but a decision is necessary, and is final, so far as the preference affects the jurisdiction of the court to adjudicate upon the petition. If the court did not have this power, all that it would be necessary for any creditor and a colluding insolvent to do to defeat the proceeding in bankruptcy, would be to arrange a confession of judgment for a sum so large as to exceed by double the aggregate claims of bona fide creditors. The validity of the confession of judgment now under consideration being the only question left in this case, what are the facts in regard to it? The debtor defendant Mayo is made a witness and put upon the stand by M. E. McDowell & Co. He proves that M. E. McDowell, the senior partner, "was a whole week, till Friday, January 22, 1874, examining Mayo's affairs, and that it appeared upon the examination of his accounts, that his assets were less than his liabilities." He proves that this appeared at the examination in his factory, when Mayo's liability to McDowell & Co. was ascertained on that Friday, January 22, 1875, to be less than sixteen thousand dollars. He proves that on the next day, McDowell & Co. took a confession of judgment from him for twenty-four thousand seven hundred and sixty-three dollars. He proves, also, that on the

day of confessing the judgment for this larger amount, he asked McDowell & Co.'s counsel, in the presence of M. E. McDowell, whether this confession of judgment would be an act of bankruptcy, and that this counsel (who did not seem to know of the previous examination of his affairs by McDowell, which had disclosed to him Mayo's insolvency), advised him to consult his own counsel; but stated that the amount for which the judgment was to be confessed was too large to allow of the remaining creditors taking steps in bankruptcy. Do these facts, proved by the witness whom McDowell & Co. themselves put upon the stand, show that that firm "had reasonable cause to believe that the debtor was insolvent, and knew that a fraud on the bankrupt act was intended?" Certainly they had reasonable cause to believe Mayo's insolvency, for they knew that he was insolvent by a long familiarity with, and a recent week's examination of his affairs. Did they also know that Mayo intended a fraud upon the bankrupt act? A fraud upon that act is an effort to defeat its objects. The leading object of that act is to secure a pro rata distribution among creditors, of the estate of the bankrupt. This confession of judgment could not but defeat that object, and could not but have been intended to defeat that object by Mayo; and M. E. McDowell could not but have known that that was Mayo's intention. If, then, it be a maxim of law that no man shall be allowed to take advantage of his own wrong; and if it be true that a fraud upon a statute cannot be allowed to defeat the purposes of the statute, am I at liberty to treat this claim of McDowell & Co. as a provable debt for the purpose of defeating the jurisdiction of this court in this proceeding?

It is not necessary for me in determining the question now before the court, to pass upon the question of "actual fraud." There is a distinction between fraud upon the bankrupt act, and "actual fraud." Taking a preference from an insolvent, knowing him to be an insolvent, is a fraud upon the act; though it may be honest in a merely moral point of view. But if a confession of judgment were taken in this case for twenty-four thousand dollars when the amount really due was only sixteen thousand dollars, then there would have been "actual fraud." I cannot at this stage of the case try the question of "actual fraud" in the meaning of the clause of the 39th section, running in these words: "And such person, if a creditor, shall not, in cases of actual fraud, be allowed to prove for more than a moiety of his debt." That question must be tried and determined at a future period, under a plenary proceeding in chancery; and I expressly disclaim passing now upon the question of "actual fraud." But, for the purpose of determining the jurisdiction of the court, I am obliged to deal with the confession of judgment at once, so far as to decide whether or not it was a fraud upon the bankrupt act. Upon the evi-

dence of Mr. Mayo I feel bound to decide that it was. If so, it cannot be computed in estimating the aggregate provable claims against the debtor, at least as to half of its amount. The amendment of June, 1874, and section 23 of the original act, must be taken together. Section 23 does not use the word "fraud." It simply declares that a preference taken from a debtor, when reasonable cause existed for believing that he was insolvent, shall not be proved, etc., until the preferred creditor has surrendered the property received under the act of preference. The same section provides that where the validity of any claim is doubted by the judge, the proof of it shall be postponed until the appointment of the assignee; which is as much as to say that the debt is not provable at the date of adjudication, in whole or in part. The clause last quoted from the 39th section provides that a creditor guilty of "actual fraud" shall not be allowed to prove for more than half of his debt; but if the 23d section is to stand, this proof for the moiety of the debt is not admissible until after the assignee is appointed. I think, therefore, that this debt cannot be received or counted as proved or as provable until after the assignee shall have been appointed. A doubtful claim cannot be considered as provable until after it has been proved. For the purpose of determining the jurisdiction of the court, I must refuse to treat the claim of McDowell & Co. as provable until it is proved, in pursuance of the provisions of the 23d section. Whether it will then be provable in whole, or only for a moiety, is not material to the question now to be decided, inasmuch as the number of petitioning creditors is sufficient to give jurisdiction to the court to adjudicate upon this petition, in either event. I decide, therefore, that a sufficient number of creditors have joined in the petition, and that an order of adjudication must be made.